## McQUILLEN et al. v. DILLON et al.
### No. 228.

Circuit Court of Appeals, Second Circuit.
July 25, 1938.

Charles Winkelman and Arthur S. Friend, both of New York City (Arthur Berenson, Bernard Berenson, and Samuel Gottlieb, all of Boston, Mass., and Lawrence Berenson, of New York City, of counsel), for appellants.

Wright, Gordon, Zachry & Parlin, of New York City (John T. Cahill, Mathias F. Correa, and Fred J. Knauer, all of New York City, of counsel), for appellees Clarence Dillon, as President of Dillon, Read & Co., and Karl H. Behr.

Shearman & Sterling, of New York City (Chauncey B. Garver, Clifford M. Bowden, and George W. Moorhead, all of New York City, of counsel), for appellee National Cash Register Co.

McLaughlin & Stickles, of New York City (Chester B. McLaughlin, of New York City, and Frank H. Foley, of Mount Vernon, N. Y., of counsel), for appellees Edward A. Deeds and Gordon S. Rentschler.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

There can be no doubt that the Maryland decree so far as it purported to cancel the interest of Dillon, Read & Co. in certain shares of stock of National Cash Register Company on the theory that they were unlawfully issued would necessarily rest upon proof that the shares were owned by Dillon, Read & Co. at the time of the commencement of suit. There was no such allegation in this or the Maryland bill. The plaintiffs' allegations are entirely vague and uncertain as to whether the stock interest was retained down to the time of bringing suit. The confused allegations in subdivision 15F (at page 25) of the Maryland bill leave us unable to determine whether the statement that the shares alleged to be within the jurisdiction and in the possession of "these defendants" refers at all to Dillon, Read & Co., who as they were not officers or directors could not "illegally and improperly issue shares to themselves", or only to "defendant officers and directors" by whom it is alleged in 15F, supra, the shares were "held principally". Indeed, it appears earlier in the bill, under subdivision 12F (2), that certain of the defendants "pretended to sell" to Dillon, Read & Co., 50,896 "B" shares and that Dillon, Read & Co. sold 16,667 of these "B" shares to Barringer, Allyn and James. It is nowhere specifically alleged that even the balance of 34,229 shares or their substitutes in the form of "C" or "A" shares remained in the hands of Dillon, Read & Co. down to the time of commencement of the Maryland suit. No basis is afforded for a process in rem against Dillon, Read & Co. in respect to these shares and certainly not as to the balance. The plaintiffs especially rely on Harvey v. Harvey, 7 Cir., 290 F. 653, but that decision, which with due respect we think highly doubtful, if it can be defended at all, Robertson v. Labor Board, 268 U.S. 619, 622, 623, 45 S.Ct: 621, 69 L.Ed. 1119, did not involve the enforcement of a decree quasi in rem by a suit in aid of it in another jurisdiction. The facts there differed from those before us not only in the above re-

spect but also because jurisdiction over the stock interest affected by the decree in rem existed at the time the suit had been brought. We think the whole attempt to reach the stock under Section 57 of the Judicial Code, 28 U.S.C.A. § 118, fails for lack of any showing that Dillon, Read & Co. owned any part of it when the court in Maryland attempted to exercise jurisdiction over the res. Jurisdiction depended on proof of their interest in the res at that time. Thompson v. Whitman, 18 Wall. 457, 21 L.Ed. 897. Since the provisions of the Maryland decree that Dillon, Read & Co. surrender and endorse the stock certificates are ancillary to a decree quasi in rem, they must fall with it. If, however, those provisions be regarded as independent personal orders, under well-established principles they would be void since there was no personal service in the original jurisdiction. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565.

While we place our decision on the foregoing ground we do not mean to suggest that the plaintiffs would succeed if Dillon, Read & Co. had held the stock at the time when the Maryland suit was brought. Even upon such an assumption plaintiffs would still encounter most serious obstacles. In that event the present suit would involve an attempt to enforce in personam a decree in rem granted in another jurisdiction. The authorities indicate that suit on an in rem decree will not lie under such circumstances. Cooper v. Reynolds, 10 Wall. 308, 318, 19 L.Ed. 931; Graber v. Killits, 6 Cir., 282 F. 185, 197: Pawling v. Willson, 13 Johns., N. Y., 192, 206; Skratt v. Carnera, 175 A. 366, 12 N.J.Misc. 826; Smith v. Gordon, 204 N.C. 695, 169 S.E. 634; In re Longshore's Will, 188 Iowa 743, 176 N.W. 902, 903. The plaintiffs would also have to meet the objection that the remedies sought in the New York court are directions to Dillon, Read & Co. to surrender and endorse certificates of stock in aid of like personal directions in the Maryland decree granted without personal service of process and the further objection that suit may only be brought on a foreign judgment "which establishes a definite, unconditional liability for the payment of money". Beale, Conflict of Laws, Sec. 449.1; American Law Institute, Restatement of Conflict of Laws, Sec. 449.

The foregoing considerations justify the dismissal of the bill as to Dillon, Read & Co. The lower court was correct in treating the decree as a nullity, though we have placed our decision on another ground. As

to the remaining appellees, it is enough to say that they were certainly under no duty to observe the terms of a void decree directed solely against Dillon, Read & Co., whatever might have been their duty were the decree valid.

Decree affirmed.